# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

| | |
|---|---|
| **BRONSON WAGNER,** individually and on behalf of all others similarly situated, | Case No. : 1:18 – cv-1118 |
| *Plaintiff*, | **CLASS ACTION COMPLAINT** |
| *v.* | **DEMAND FOR JURY TRIAL** |
| **TEMPOE, LLC d/b/a WHY NOT LEASE IT,** a Delaware limited liability company, and **CALL CENTER SERVICES INTERNATIONAL, LLC.,** a California limited liability company, | |
| *Defendants*. | |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Bronson Wagner ("Wagner" or "Plaintiff Wagner") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant Tempoe, LLC d/b/a Why Not Lease It ("Tempoe") and Defendant Call Center Services International, LLC ("CCSI" of "Defendant CCSI") to (1) stop their practice of placing calls using an "automatic telephone dialing system" to the cellular telephones of consumers nationwide without their prior express consent; (2) enjoin Defendants from continuing to place autodialed telephone calls to consumers who did not provide their prior express consent to receive them; and (3) obtain redress for all persons injured by its conduct. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

### NATURE OF THE ACTION

1.     Senator Hollings, the Telephone Consumer Protection Act's ("TCPA") sponsor, described autodialed calls as "the scourge of modern civilization.  They wake us up in the

morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound

us until we want to rip the telephone cord out of the wall." 137 Cong. Rec. 30, 821 (1991).

Senator Hollings presumably intended telephone subscribers another option other than telling the

autodialers to simply stop calling them. *Osario v. State Fram Bank, F.S.B.,* 746 F.3d 1242, 1256

(11th Cir. 2014).  Thus, the TCPA was enacted to empower the private citizen and protect the

privacy (and perhaps the sanity) of consumers nationwide.

2.      But, unfortunately, illegal autodialed calls continue to increase and further invade

the privacy of millions of consumers.  In 2016, 4 million complaints related to unwanted calls

were lodged with the Federal Communications Commission (the "FCC").[1]  This number is

markedly higher than the previous year, which yielded 2.6 million complaints (which rose from

the year before that).[2]  Notably (and inauspiciously), many consumers who have been subjected

to illegal calling do not report each instance, and the actual number of consumers affected by

these calls is significantly higher.

---

[1] *National Do Not Call Registry Data Book FY 2016, October 1, 2015 - September 30, 2016,* FEDERAL TRADE COMMISSION (Dec. 2016), https://www.ftc.gov/system/files/documents/reports/national-do-not-call-registry-data-book-fiscal-year-2016/dnc_data_book_fy_2016_post.pdf; *Consumer Complaints Data - Unwanted Calls, FCC - Open Data,* FEDERAL COMMUNICATIONS COMMISSION, https://opendata.fcc.gov/Consumer-and-Government-Affairs/Consumer-Complaints-Data-Unwated-Calls/vakf-fz8e.

[2] *National Do Not Call Registry Data Book FY 2015,* FEDERAL TRADE COMMISSION (Nov. 2015), https://www.ftc.gov/system/files/documents/reports/national-do-not-call-registry-data-book-fiscal-year-2015/dncdatabookfy2015.pdf; *Consumer Complaints Data - Unwanted Calls, FCC - Open Data,* FEDERAL COMMUNICATIONS COMMISSION, https://opendata.fcc.gov/Consumer-and-Government-Affairs/Consumer-Complaints-Data-Unwanted-Calls/vakf-fz8e; *Fact Sheet: Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless Phones,* FEDERAL COMMUNICATIONS COMMISSION, https://apps.fcc.gov/edocs_public/attachmatch/DOC-333676A1.pdf; *National Do Not Call Registry Data Book FY 2014,* FEDERAL TRADE COMMISSION (Nov. 2014), https://www.ftc.gov/system/files/documents/reports/national-do-not-call-registry-data-book-fiscal-year-2014/dncdatabookfy2014.pdf.

3.      Here, Defendant Tempoe is a company that provides no credit required shopping solutions.  It offers a leasing program that enables consumers to make payments, renew the lease, return the item, or purchase the item in early buyouts.[3]

4.      The "leasing program" mentioned in the above paragraph is effectuated through Tempoe LLC's "doing business as" trade name, Why Not Lease It.[4]

5.      In an attempt to collect debts owed to Tempoe and/or Why Not Lease It, Tempoe hired CCSI to place telephone calls on its behalf.[5]

6.      As shown below, CCSI is a call center and contacts consumers to collect or attempt to collect outstanding debts.[6]  In addition, CCSI boasts as of July, 2017 that an automatic dialer is one of the "5 Basic Tools Every Call Center Should Use to Boost Performance."[7]



---

[3] https://www.bloomberg.com/research/stocks/private/snapshot.asp?privcapId=312613192
[4] In fact, when one clicks on "Get Started" on WhyNotLeaseIt.com, the user is directed to fill out an application on Tempoe.com https://pulse.tempoe.com/onlinewebapp-intempoe.aspx.  Also, WhyNotLeaseIt.com's website is registered to Tempoe, LLC https://www.networksolutions.com/whois/results.jsp?domain=whynotleaseit.com. Also the trademark of WhyNotLeaseIt is owned by Tempoe, LLC https://trademarks.justia.com/874/55/whynotleaseit-87455102.html.
[5] https://www.bajacallcenters.com/about/client-testimonials/tempoe.html
[6] https://www.bajacallcenters.com/.
[7] https://www.bajacallcenters.com/about/news/call-center-tools-boost-performance.html

7.       To collect debts owed for its customers, such as Tempoe, CCSI engages in skip-tracing, which is a process whereby the debt collector collects multiple phone number associated with a debtor or even the debtor's relatives or friends in an attempt to locate the debtor.[8] Through this process though, Defendant makes calls to cell phone numbers using its autodialer that it does not have the proper consent for and thus violates the Telephone Consumer Protection Act.

8.       This case addresses CCSI's repeated pattern of practice of calling consumers on their cell phone using an autodialer who have no direct relationship with CCSI or the company CCSI is calling on behalf of (in this case, Why Not Lease It).  CCSI conducted (and continues to conduct) a wide-scale debt-collection and information-collection campaign that features the repeated making of unwanted autodialed phone calls to consumers' cellular telephones without consent, all in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

9.       Tempoe's involvement in CCSI's calling is more than mere outsourcing in that CCSI played an intimate part in the calls made on its behalf. CCSI states clearly on their website that CCSI's nearshore approach of using a team in Mexico "will allow you to establish a world-class Satellite Center with an experienced, bilingual, and performance-driven collection workforce." CCSI goes on to say "This is not 'outsourcing' rather the Mexico Collection Center becomes an extension of the existing operation and is managed by your team as part of the receivables recovery strategy."[9]  This means that Tempoe directed, managed, and ratified the

---

[8] https://www.bajacallcenters.com/expertise/debt-collection.html
[9] https://www.bajacallcenters.com/index.php/expertise/debt-collection

conduct of CCSI who was working on behalf of Tempoe.




**DEBT COLLECTION**

**Call Center Services International** (CCSI) has a proven nearshore Debt Collection Center located in Baja California (minutes from the San Diego border). CCSI's nearshore approach will allow you to establish a world-class Satellite Center with an experienced, bilingual (English/Spanish) and performance-driven collection agent workforce.

This is not "outsourcing" rather the Mexico Collection Center becomes an extension of the existing operation and is managed by your team as part of the receivables recovery strategy.

*Figure 1: https://www.bajacallcenters.com/index.php/expertise/debt-collection*

On CCSI's promo video they even mention that "Your Baja California contact center becomes an extension of your existing operation and is managed by your US team as part of your overall contact center strategy. Second, your Baja call center is fully integrated with your existing center from a workforce, technology, and telephony standpoint."[10] In addition, CCSI admits on an article on their website that "Tempoe's Baja Collections Team Hits Record 1 Million USD in May."[11]  Tempoe's Senior Director of Operations Ben Farmer states in the article posted on CCSI's website that "We have a great team in Baja…Partnering with CCSI has made our nearshore center a successful venture."[12]  Tempoe's Baja team consists of more than 175 agents and support staff.[13]

---

[10] https://www.bajacallcenters.com/
[11] https://www.bajacallcenters.com/about/client-testimonials/tempoe.html
[12] *Id.*
[13] *Id.*

New Hampshire-based TEMPOE is the leading provider of retailer leasing products designed to make consumer-leasing easier and faster. Due to TEMPOE's tremendous success in recent years, they established a Customer Service and Collection Center in Baja California, Mexico to support growing business demands. In May 2016, the Baja Collection Team hit a company record $1 Million for the month.

> *We have a great team in Baja who support the needs of the diverse businesses we serve – Ben Farmer, Senior Director of Operations.*

TEMPOE partnered with **Call Center Services International** to establish their Baja Center and provide continuous administrative support for their personnel.

> *Partnering with **CCSI** has made our nearshore center a successful venture. They had the expertise to recruit qualified personnel and provide key administrative support in Mexico., Mr. Farmer goes on to said.*

TEMPOE's Baja team consists of more than 175 highly-professional bilingual agents and support personnel.

It is clear that Tempoe oversees and directs the collection efforts of its Baja collections team.

10.     By making these autodialed calls, Defendants collectively caused Plaintiff and the members of the Classes actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the receipt of such calls, in addition to the wear and tear on their cellular telephones, consumption of battery life, lost cellular minutes, loss of value realized for the monies consumers paid to their wireless carriers for the receipt of such calls, in the form of the diminished use, enjoyment, value, and utility of their cellular telephone plans. Furthermore, Defendants made the calls knowing they interfered with Plaintiff's and the other members of the Classes' use and enjoyment of, and the ability to access their cellphones, including the related data, software, and hardware components.

11.     The TCPA was enacted to protect consumers from autodialed telephone calls like those alleged and described herein. In response to Defendants' unlawful conduct, Plaintiff files this lawsuit seeking injunctive relief, requiring Defendants to cease all autodialed telephone calling activities to cellular telephones without first obtaining prior express consent, as well as an award of statutory damages to the members of the Classes under the TCPA, costs, and reasonable attorney's fees.

## PARTIES

12.     Plaintiff Wagner resides in Westminster, Maryland.

13.     Defendant Tempoe is a limited liability company organized and existing under the laws of Delaware and is a corporation with its principal place of business located at 1750 Elm Street, Suite 200, Manchester, New Hampshire 03104.  Defendant Tempoe conducts business throughout this District, the State of Georgia, and the United States.[14]

14.     Defendant CCSI is a limited liability company organized and existing under the laws of State of California with a principal place of business located at 809 Bowspirit Road, Suite 204, Chula Vista, California 91914.  Defendant CCSI conducts business throughout this District, the State of Maryland, and the United States.

15.     Each of the Defendants was the agent of the other Defendant, and was during all relevant times acting and conducting itself within the purpose and scope of such agency. Plaintiff is informed and believes, and alleges thereon, that during all relevant times mentioned herein each Defendant was the principal, agent or employee of each other Defendant, and in acting and conducting itself as such principal, or within the course and scope of such employment or agency, took at least some part in the acts and omissions hereinafter set forth by reason of which each defendant is liable to Plaintiff for the relief sought herein. At all times relevant mentioned herein, the Defendants ratified the unlawful conduct of the other Defendant, who were acting within the scope of their agency or employment, by accepting the benefits of any transaction with knowledge of the wrongdoing, or otherwise by failing to repudiate or retract the misconduct or wrongdoing.[15]

## JURISDICTION AND VENUE

---

[14] Defendant Tempoe's parent company, TEMPOE Financial LLC has a principal office address at 7755 Montgomery Road, Suite 400, Cincinnati, Ohio 45236.  *See* https://quickstart.sos.nh.gov/online/BusinessInquire/BusinessSearch.

[15] In fact, the United States Supreme Court holds that, "[u]nder common-law principles of agency, there is vicarious liability for violations of the Telephone Consumer Protection Act." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (Jan 20, 2016).

16.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C.
§ 1331, as the action arises under the TCPA, which is a federal statute. This Court has personal
jurisdiction over Defendants because Defendants conduct a significant amount of business in this
District, solicits consumers in this District, made and continues to make unsolicited autodialed
calls in this District, and because the wrongful conduct giving rise to this case occurred in, was
directed to, and/or emanated from this District.

17.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants
conducts a significant amount of business within this District and markets to this District, and
because the wrongful conduct giving rise to this case occurred in, was directed to, and/or
emanated from this District.  Furthermore, venue is proper because Plaintiff Regan resides in this
District.

## COMMON FACTUAL ALLEGATIONS

18.     Defendant Tempoe has partnered with Defendant CCSI to collect its outstanding
debts from delinquent customers, and to collect information via survey calls.[16] To place such
calls, CCSI and Tempoe use an Automated Telephone Dialing System ("ATDS").

19.     When Defendant CCSI and Tempoe contact consumers, they are required to
obtain the consumers' prior express consent to be contacted using an ATDS on the consumers'
cellular telephone.

20.     Yet in violation of this rule, Defendants fail to obtain any prior express consent to
make these autodialed collection and survey calls to cellular telephone numbers.

21.     Consumer complaints about Defendants' invasive and repetitive calls are legion.
As a sample, consumers have complained as follows:

- These people just keep calling even though I owe no one anything and I have
  requestd they stop calling.  I Will shut off the phone if need be.  I refuse to be

---

[16] https://www.bajacallcenters.com/about/client-testimonials/tempoe.html

falsely harassed by creeps with no sense of decency.[17]

- Dummies keep calling wrong number aND rude[.][18]

- Why Not Lease It - Collection Agency.  They serv Sears, Kmart, Mattress Stores and others.  The person they were looking for no longer has this #, asked to be removed from list….we'll see if it happens.[19]

- I work nights and this number calls multiple times every day.  I have never leased anything from sears, and because of this harassment I don't even want to shop there again[.][20]

- Called 4 times at least in last 2 days interrupting my work.  Asking for Christopher, claimed the call was about a debt.  I informed them clearly "I don't know this person, never been at this number, I am a third party and this is the last time you are allowed to speak to me" … did not stop the calls.  I tried asking for the business mailing address so I can formally complain of violation of FDCPA.  They hung up on me.[21]

22.     In placing the calls that form the basis of this Complaint, Defendants utilized an ATDS in violation of the TCPA. Specifically, the hardware and software used by Defendants have the capacity to generate and store random numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Defendants' automated dialing equipment also is, or includes features substantially similar to, a predictive dialer, meaning that it is capable of making numerous phone calls simultaneously and automatically connecting answered calls to then available callers and disconnecting the rest (all without human intervention).

23.     When placing these calls to consumers, Defendants failed to obtain prior express consent as required by the TCPA from cellular telephone owners/users to make such calls.

---

[17] https://800notes.com/Phone.aspx/1-888-542-1146/2.
[18] *Id.*
[19] https://800notes.com/Phone.aspx/1-888-542-1146/3.
[20] *Id.*
[21] *Id.*

24.     At all times material to this Complaint, Defendants were and are fully aware that unwanted autodialed debt-collection calls and survey calls are being made to consumers' cellular telephones through their own efforts and/or their agents'.

25.     Defendants knowingly made (and continues to make) autodialed calls to cellular telephones without the prior express consent of the call recipients.  In so doing, Defendants not only invaded the personal privacy of Plaintiff and members of the putative Classes, but also intentionally and repeatedly violated the TCPA.

## FACTS SPECIFIC TO PLAINTIFF BRONSON WAGNER

26.     Plaintiff Wagner has had his cell phone number for over ten years.

27.     On November 6, 2017 Plaintiff Wagner received two calls from 888-542-1146.

28.     On November 7, 2017 Plaintiff Wagner received and answered a call from 888-542-1146 on his cell phone.  He heard a long 5-10-second pause before hearing a click and being connected to a live operator.  A long pause such as this is indicative of the caller using an autodialer to make the call. When an operator finally came onto the line, an operator identified to Plaintiff Wagner that she was calling from Why Not Lease It and was looking for a woman's name whom Plaintiff Wagner had never heard of.  He told the operator that he does not know the woman and to stop calling him.

29.     On November 8, 2017, despite having told the Why Not Lease It representative the day before to stop calling him, Plaintiff Wagner received another call from 888-542-1146. When he answered this call, he again heard another long 5-10 second pause before hearing a click and being connected to a representative.  The representative identified that she was calling from Why Not Lease It and was asking for a different person's name than the previous day's caller.  Plaintiff Wagner once again told the representative he does not know the person they inquired about and to stop calling him.

30.     Despite Plaintiff Wagner's instructions to stop calling him, he received yet another call on November 8, 2017 a few hours later.  Again, when Plaintiff Wagner picked up the call he heard a long 5-10 second pause and then a click when he was connected to a representative.  The representative identified that she was calling from Why Not Lease It and that she was conducting a survey to see how the previous calls went.  Plaintiff Wagner told her he was not interested in answering any survey questions and to stop calling him.

31.     Plaintiff does not have a relationship with Defendants, or any of their affiliated companies, or has ever requested that Defendants place calls to him.  Simply put, Defendants did not possess Plaintiff's prior express consent to place a telephone call to him on his cellular telephone using an autodialer and he has no business relationship with Defendants.

32.     By making unauthorized autodialed telephone calls as alleged herein, Defendants have caused consumers actual harm in the form of annoyance, nuisance, and invasion of privacy. In addition, the calls disturbed Plaintiff's use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on Plaintiff's phone. In the present case, a consumer could be subjected to many unsolicited collection calls as Defendants do not take care to ensure that the recipients of their autodialed collection calls have given their prior express consent to be called, and fails to provide a working opt-out mechanism

33.     In order to redress these injuries, Plaintiff, on behalf of himself and the classes of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited autodialed telephone calls to cellular telephones.

34.     On behalf of the Classes, Plaintiff seeks an injunction requiring Defendants to cease all unsolicited autodialed telephone calling activities and an award of statutory damages to the class members, together with costs and reasonable attorney's fees.

## CLASS ALLEGATIONS

35.     Plaintiff bring this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and all others similarly situated and seeks certification of the following Classes:

> **Autodialed No Consent Debt Collection Class:** All persons in the United States from four years prior to the filing of this action through the present who (1) Defendants (or a third person acting on behalf of Defendants) called, (2) on the person's cellular telephone, (3) using an autodialer (4) for the purposes of collecting a debt, and (5) for whom Defendants claim they obtained prior express consent in the same manner as Defendants claim they supposedly obtained prior express consent to call the Plaintiff Wagner.

> **Autodialed No Consent Survey Class:** All persons in the United States from four years prior to the filing of this action through the present who (1) Defendants (or a third person acting on behalf of Defendants) called, (2) on the person's cellular telephone, (3) using an autodialer and (4) for whom Defendants claim they obtained prior express consent in the same manner as Defendants claim they supposedly obtained prior express consent to call the Plaintiff.

36.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, their subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendants have been fully and finally adjudicated and/or

released. Plaintiff anticipate the need to amend the class definition following appropriate discovery.

37.     **Numerosity**: The exact size of the Classes are unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendants placed autodialed collection calls to thousands of consumers who fall into the definition of the Classes. Members of the Classes can be easily identified through Defendants' records.

38.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

      (a)  whether Defendants' conduct constitutes a violation of the TCPA;

      (b)  whether Defendants systematically made telephone calls to members of the Classes without first obtaining prior express consent to make the calls;

      (c)  whether Defendants utilized an automatic telephone dialing system to make its calls to members of the Classes;

      (d)  Whether Defendants systematically made autodialed telephone calls to consumers after consumers attempted to opt out; and

      (e)  whether members of the Classes are entitled to treble damages based on the willfulness of Defendants' conduct.

39.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff have no interests antagonistic to those of the Classes, and Defendants have no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to the Classes.

40.     **Appropriateness**: This class action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant' business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Classes as wholes, not on facts or law applicable only to the Plaintiff. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendants' misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

## FIRST CAUSE OF ACTION
### Telephone Consumer Protection Act
### (Violations of 47 U.S.C. § 227 *et seq.*)
### (On Behalf of Plaintiff Wagner and the Autodialed No Consent Debt Collection Class)

41.     Plaintiff Wagner incorporates the foregoing factual allegations as if fully set forth herein.

42.     Defendants made autodialed telephone calls to cellular telephone numbers belonging to Plaintiff Wagner and other members of the Autodialed No Consent Debt Collection Class without first obtaining prior express consent to receive such calls.

43.     Defendants made the telephone calls using equipment that had the capacity to store or produce telephone numbers using a random or sequential number generator, to receive

and store lists of phone numbers, and to dial such numbers, *en masse*, without human intervention.

44.     The telephone dialing equipment utilized by Defendants, also known as a predictive dialer, dialed numbers from a list, or dialed numbers from a database of telephone numbers, in an automatic and systematic manner. Defendants' autodialer disseminated information *en masse* to Plaintiff Wagner and other consumers.

45.     By making the unsolicited telephone calls to Plaintiff Wagner and the Autodialed No Consent Debt Collection Class members' cellular telephones without their prior express consent, and by utilizing an autodialer to make those calls, Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii).

46.     As a result of Defendants' unlawful conduct, Plaintiff Wagner and the members of the Classes are each entitled a minimum of Five Hundred Dollars ($500.00) in damages for each such violation of the TCPA.

## SECOND CAUSE OF ACTION
### Telephone Consumer Protection Act
### (Violations of 47 U.S.C. § 227 *et seq.*)
### (On Behalf of Plaintiff and the Autodialed No Consent Survey Class)

47.     Plaintiff incorporate and realleges paragraphs 1-46 as if fully set forth herein.

48.     Defendants made autodialed telephone calls to cellular telephone numbers belonging to Plaintiff Wagner and the other members of the Autodialed No Consent Survey Class without first obtaining prior express consent to receive such calls.

49.     Defendants made the telephone calls using equipment that had the capacity to store or produce telephone numbers using a random or sequential number generator, to receive and store lists of phone numbers, and to dial such numbers, *en masse*, without human intervention.

50.     The telephone dialing equipment utilized by Defendants, also known as a predictive dialer, dialed numbers from a list, or dialed numbers from a database of telephone numbers, in an automatic and systematic manner. Defendants' autodialer disseminated information *en masse* to Plaintiff and other consumers.

51.     By making the unsolicited telephone calls to Plaintiff and the Autodialed No Consent Debt Survey Class members' cellular telephones without their prior express consent, and by utilizing an autodialer to make those calls, Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii).

52.     As a result of Defendants' unlawful conduct, Plaintiff and the members of the Autodialed No Consent Survey Class are each entitled a minimum of Five Hundred Dollars ($500.00) in damages for each such violation of the TCPA.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

53.     An order certifying the Classes as defined above, appointing Plaintiff as the representative of the Classes, and appointing his counsel as Class Counsel;

54.     An award of actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater all to be paid into a common fund for the benefit of the Plaintiff and the Class Members;

55.     An order declaring that Defendants' actions, as set out above, violate the TCPA;

56.     A declaratory judgment that Defendants' telephone calling equipment constitutes an automatic telephone dialing system under the TCPA;

57.     An order requiring Defendants to disgorge any ill-gotten funds acquired as a result of its unlawful telephone calling practices;

58.     An order requiring Defendants to identify any third-party involved in the autodialing as set out above, as well as the terms of any contract or compensation arrangement it has with such third parties;

59.     An injunction requiring Defendants to cease all unsolicited autodialed calling activities, and otherwise protecting the interests of the Classes;

60.     An injunction prohibiting Defendants from using, or contracting the use of, an automatic telephone dialing system without obtaining, and maintaining records of, call recipient's prior express consent to receive calls made with such equipment;

61.     An injunction prohibiting Defendants from contracting with any third-party for marketing purposes until it establishes and implements policies and procedures for ensuring the third-party's compliance with the TCPA;

62.     An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above; and

63.     Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff request a trial by jury of all claims that can be so tried.

Respectfully Submitted,
**BRONSON WAGNER**, individually and on behalf
of Classes of similarly situated individuals

Dated: April 19, 2018                          By:   ___/s/ Aimee Bader_____
                                               Local Plaintiff's Attorney

                                               Advocate Real Estate, LLC
                                               2029 Fleet Street
                                               Baltimore, MD 21231
                                               (410) 499-6793

17

Stefan Coleman*
Law@StefanColeman.com
201 S. Biscayne Blvd, 28th Floor
Miami, Fl 33131
Phone: (877) 333-9427
Fax: (888) 498-8946

Ross Schmierer*
DeNittis Osefchen Prince, P.C.
Five Greentree Centre
525 Route 73 N.
Marlton, NJ 08053
Phone: (856) 797-9951
Fax: (856) 797-9958
*Attorneys for Plaintiff and the putative Classes*

*Pro Hac Vice to be sought*